Nancy BENTON, et al., Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 3:02cv61.

United States District Court,
S.D. Ohio,
Western Division.

July 9, 2007.

Donald Nathaniel Watson, Ginger Jenkins, Gary Williams Parenti Finney Lewis McNamus Watston & Sperand, Stuart, FL, Renny Joe Tyson, Renny J. Tyson Co., LPA, Columbus, OH, for Plaintiffs.

Charles Waugh Mahan, Dunlevey, Mahan & Furry, Gregory Mark Kaskey, Dinsmore & Shohl LLP, Dayton, OH, Christina J. Marshall, Lawrence A. Sutter, III, Sutter O'Connell Mannion & Farchione, Cleveland, OH, James M. Campbell, Mark J. Hoover, Campbell Campbell Edwards & Conroy, Boston, MA, Samuel Richard Richman, Beavercreek, OH, for Defendant.

DECISION AND ENTRY OVERRULING DEFENDANT FORD MOTOR COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT, ANDREW LAWYER (DOC. # 30)

RICE, District Judge.

## I. Introduction

Plaintiffs, Nancy and Dean Benton, brought this products liability action against Defendant, Ford Motor Company ("Ford" or "Defendant" herein) for alleged damages arising out of an accident that occurred on January 12, 2000, on Interstate 70, Montgomery County, Ohio.[1] The suit was filed on December 24, 2001 in the Montgomery County Court of Common Pleas and was subsequently removed to this court by Ford, pursuant to 28 U.S.C. §§ 1441 and 1332.[2]

Plaintiff alleges that a defective design caused her Ford Explorer that she was driving to roll over on the highway, seriously injuring her (Doc. # 32 at 2). In support, Plaintiff proposes to offer the expert testimony of Andrew Lawyer. Lawyer is an electrical engineer, "specializing in accident reconstruction and safety analysis in electrical design safety and failure analysis," (Doc. # 32 at Exhibit "A") and proposes to testify that the 1998 model Ford Explorer possesses a design defect that caused Plaintiff's accident. Specifically, Lawyer will offer the following opinions: that the 1998 Ford Explorer has a high propensity to roll over and that this alone caused Plaintiff's accident; that the Explorer's "stability index" (ratio of track width to height of center of gravity) was too low; and that it was technically feasible for Ford to have designed the Explorer to achieve a safer stability index (Doc. # 32 at 9–10). The matter is currently before the Court, as a result of Defendant's Motion to Exclude the Testimony of Plaintiff's Expert, Andrew Lawyer (Doc. # 30).

## II. Analysis

Defendant moves to exclude the testimony of Lawyer (Doc. # 30), arguing that he

---

1. Herein, "Plaintiff" shall refer to Nancy Benton, as she is the primary party.

2. The Complaint also named Interstate Ford, Inc., as a Defendant. This party, however, was dismissed with prejudice on April 25, 2003 (Doc. # 24).

lacks expertise in the area in which he proposes to testify and that his testimony would be unreliable. For the reasons discussed herein, Defendant's Motion to Exclude the Testimony of Plaintiff's Expert is denied.

The Federal Rules of Evidence govern the use of expert testimony. Specifically:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702. Furthermore, Rule 703 indicates that:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FED.R.EVID 703.

■ Initially, the District Court is the gatekeeper with respect to the admissibility of expert witness testimony, determining whether an expert's testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir.2000). This gatekeeping function applies "when considering *all* expert testimony, including testimony based on technical and other specialized knowledge." *Clay*, 215 F.3d at 667, *citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (emphasis in original). In *Daubert*, the Supreme Court interpreted the gatekeeping function to consist of the analysis of four factors: whether the theory or technique employed in the proffered testimony has been or can be tested; whether it has been subjected to peer review and publication; whether there is a high known or potential rate of error; and whether the theory or technique enjoys general acceptance in the relevant scientific community. 509 U.S. at 593–94, 113 S.Ct. 2786. The Court turns to *Daubert*, following an analysis of Lawyer's expert qualifications.

## A. Lawyer's Qualifications as Expert

■ Courts typically begin their analysis by addressing whether a proffered witness's credentials qualify him or her as an expert in the field in which testimony will be given. *See Kumho Tire*, 526 U.S. at 153, 119 S.Ct. 1167; *Clay*, 215 F.3d at 667–68. It should be noted that, although things like extensive academic pedigree and prolific scholarly publication by a proffered expert are persuasive indicators of qualification, the presence or absence of such qualifications almost always bears on the weight that the jury should assign to the testimony and *not* on the admissibility of the testimony itself. In general, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky

but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. To be sure, the Sixth Circuit agrees that, where the opposing side has the opportunity to cross-examine an expert regarding his qualifications and where the jury is properly instructed to determine for itself the weight and credibility to be given to the expert's testimony, an argument opposing admissibility of the testimony on the grounds that it is outside the witness's area of expertise must fail. *Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 515 (6th Cir.1998). *Accord Clay,* 215 F.3d at 668 (qualifying an expert witness to testify as to a design defect of an automobile despite the facts that he never had published an article nor had he been employed in the auto industry) and *First Tennessee Bank National Association v. Barreto,* 268 F.3d 319, 332 (6th Cir.2001) (qualifying an expert witness to testify as to his specialized knowledge of banking without any explicit reference to his educational credentials).

In the present case, this issue constitutes much of Defendant's objection. In one instance, Defendant argues that Lawyer's being an electrical engineer does not qualify him on the issue of product design defect. Defendant suggests that his lack of experience in the automotive industry and the fact that he has not reviewed the design specifications for the 1998 Ford Explorer or the vehicle itself render him unqualified (Doc. # 30 at 10 (unnumbered)). This line of argument was, in fact, answered by the Sixth Circuit in *Clay.* There, the defendant automobile manufacturer appealed from the district court's decision admitting the testimony of the plaintiff's expert witness as to the allegedly defective design of the Ford Bronco II. Specifically, the expert witness, a mechanical engineer, testified to, among other things, the Bronco II's "stability index" (the same index regarding which Lawyer will testify). Over the defendant's

objections, the Court of Appeals upheld the District Court's admission of the testimony, despite the fact that the witness had "never worked in the automobile manufacturing industry, [had never] tested a two-wheel drive Bronco II[, and had] never published an article on vehicle handling and stability." 215 F.3d at 668. Instead, the court noted the expert's extensive consulting practice in accident reconstruction, as well as his testimony regarding how dynamics can be used to "analyze vehicles and parts of machines and that accident reconstruction is simply an application of dynamics." *Id.* It is this same engineering phenomenon on which Lawyer will testify (Doc. # 32 at 10).

Defendant nonetheless argues that Lawyer's testimony should be excluded because prior courts have excluded the testimony of engineers in similar cases, because "their expertise was not particular to the science involved in the case" (Doc. # 30 at 10 (unnumbered)). The one court that Defendant points to for this proposition upheld, without any analysis, the trial court's refusal to allow a mechanical engineer to testify as to automotive design, because the trial judge's decision was not manifestly erroneous. *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir.1979). It should be noted that this decision was issued by a court lacking binding authority over this court, and at a time well before the Supreme Court's decision in *Daubert,* which, according to the Sixth Circuit, was "a case intended to relax the admissibility requirements for expert scientific evidence." *First Tennessee Bank,* 268 F.3d at 334, *quoting United States v. Jones,* 107 F.3d 1147, 1158 (6th Cir.), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997). Defendant also points to *Pride v. Bic Corp.,* 54 F.Supp.2d 757 (E.D.Tenn. 1998), where an expert was deemed not

qualified by virtue of "never [having] been involved in the area of the product's design or manufacturing" (Doc. # 30 at 10 (unnumbered)). Defendant misinterprets the decision, however. In fact, the expert's testimony was excluded because he had no experience at all (employment, research or otherwise) in the subject area in which he proposed to testify. 54 F.Supp.2d at 761. Here, Lawyer has relevant experience in dynamics and accident reconstruction (having analyzed and reconstructed more than 50 accidents involving vehicle rollovers), as well as in vehicle design as it relates to accident reconstruction (Doc. # 32 at 5–7). The fact that Lawyer has never worked in the automotive industry is immaterial. The field of accident reconstruction necessarily entails "an underlying understanding of vehicle design in some aspects of the vehicle in order to reconstruct" (*Id.* at 7, *quoting* Lawyer Dep. at 53). Despite Lawyer's lack of formal background in the automotive design industry, the Court is convinced that his application of this understanding of vehicle design and dynamics to the more than 50 roll-over accidents he has analyzed and the use of the stability index ratio qualifies him as an expert as to the design issues in this case. Taking note of Defendant's concerns, the Court believes that its arguments go to the weight, rather than the admissibility, of Lawyer's opinions.

As the Supreme Court has advised, the best way for Defendant to demonstrate what, according to it, are the shortcomings of Lawyer's expertise is to employ excellent cross-examination skills in front of the jury. After all, it is the jury that will make the all-important determinations of the credibility of witnesses during trial and the weight to be given their testimony.

### B. *Daubert* Analysis

■ As indicated, *supra*, the District Court's duty under *Daubert* is to determine that an expert's proposed testimony is not only relevant, but reliable. It should be noted at the outset that a court's analysis of the reliability of expert testimony is to focus the methodology and principles used by the expert, and not on the expert's conclusions. *Clay*, 215 F.3d at 667, *citing Daubert*, 509 U.S. at 595, 113 S.Ct. 2786.

Defendant's chief indictment of Lawyer's reliability is his alleged miscalculations of the Explorer's stability index, arising out of allegedly sloppy and selective use of various statistics available for track width and gravity height of different vehicles (Doc. # 30 at 11–13 (unnumbered)). Defendant, however, mistakes reliability of conclusions for reliability of methodology. *Daubert* concerns only the latter. Defendant very well may be correct that the data used by Lawyer yields incorrect conclusions about the presence of a design defect in the Explorer. However, even if true, this fails to undermine sufficiently the validity of the *processes* employed by Lawyer to reach those conclusions. Defendant would be well served to make its arguments regarding Lawyer's use of statistics to the jury, or, better yet, to offer testimony of an expert who uses statistics that it finds to be more sound.

Defendant criticizes Lawyer for "not [having] done any testing in this case" (*Id.* at 13 (unnumbered)). This misunderstands, however, *Daubert's* preference for testing in the first factor. In crafting a test to enable courts to sort out unreliable expert testimony, the Supreme Court explained that the ability of a theory or technique to assist the trier of fact turns on "whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786. Defendant has not demonstrated that Lawyer's methodology has not been,

or is incapable of being, tested. To the contrary, Lawyer explains all of the calculations that he uses to reach his conclusions regarding the Explorer's stability index. *Daubert's* test to determine reliability focuses on the capability of a methodology or theory to be tested, *see* 509 U.S. at 593, 113 S.Ct. 2786, and not necessarily on whether any given expert's conclusions have been tested. As the Sixth Circuit has noted, this latter concern is best left for the jury in weighing the evidence. *Clay*, 215 F.3d at 668 (It is within the discretion of the district court to decide that an expert witness's failure to test his theories goes to the weight of its testimony and not to its admissibility.). Of course, Defendant is entitled to be skeptical of Lawyer's conclusions, and arguing that Lawyer did not effectively test his results may be an effective way to make the jury skeptical as well when it weighs Lawyer's testimony.

Defendant has not argued that Lawyer's testimony is unreliable under any of the other three Daubert factors. The second factor asks whether a proffered expert's theory or technique has been subjected to peer review and publication. Lawyer's Curriculum Vita indicates that entire institutes exist that are devoted to accident reconstruction. This strongly suggests that the discipline in general has been vetted thoroughly by the relevant community. Next, the third factor asks whether there is a high known or potential rate of error. Again, the pervasiveness of this discipline would tend to diminish the possibility that it is plagued by a high error rate. Finally, the fourth factor inquires as to whether the theory or technique enjoys general acceptance in the relevant scientific community. In view of the Sixth Circuit's analysis in *Clay*, the Court believes that the discipline of accident reconstruction as it pertains to alleged design defects, is sufficiently established and well-accepted in the relevant technical community that it does not raise *Daubert's* concerns of so-called junk science.

Most of Defendant's reasons why Lawyer's testimony is unreliable do not properly bear on the testimony's admissibility. Defendant argues, for example, that Lawyer's opinions are "unsupported conjecture" because they were not based on data obtained from Ford; that Lawyer used data from a source that he allegedly did not trust; that his calculations properly apply to passenger vehicles, as opposed to sport utility vehicles (such as the Ford Explorer); and that Lawyer's opinion that the Explorer is defective is "no more than a conclusory opinion based on speculative evidence" (Doc. # 30 at 11–14 (unnumbered)). None of these arguments pertains to the reliability of Lawyer's methodology, although they may pertain to the reliability of his conclusions, which must be weighed by the trier of fact.

## III. Conclusion

Since Defendant has not adequately shown that Lawyer's methodology and/or techniques are unreliable and therefore inadmissible for the reasons outlined by the Supreme Court in *Daubert* and *Kumho Tire*, its Motion to Exclude the Testimony of Plaintiff's Expert, Andrew Lawyer (Doc. # 30), is hereby overruled.